**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jun 19 2012, 9:13 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**STEPHEN T. OWENS**
Public Defender of Indiana

**ANNE MURRAY BURGESS**
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ELLEN H. MEILAENDER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| KUNTA K. GRAY, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 49A04-1111-PC-623 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Kurt M. Eisgruber, Judge
The Honorable Steven J. Rubick, Magistrate
Cause No. 49G01-0012-PC-220679

June 19, 2012

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**NAJAM, Judge**

## STATEMENT OF THE CASE

Kunta K. Gray appeals the post-conviction court's denial of his petition for post-conviction relief. Gray raises two issues for our review, which we restate as follows:

1. Whether Gray preserved his claim of juror misconduct for post-conviction review; and

2. Whether he was denied the effective assistance of trial counsel.

We affirm.

## FACTS AND PROCEDURAL HISTORY

This is the fourth time this court has heard the underlying facts of Gray's convictions. We have previously described those facts as follows:

The evidence most favorable to the judgment is that on November 16, 2000, Gray arranged to purchase a large quantity of marijuana from Greg Jones at an Indianapolis residence. Jones's friend, Avant, was at the house when Gray and an unidentified man arrived to buy the drugs. Jones retrieved a brown trash bag from his vehicle parked outside and then escorted Gray and the other man to the rear of the house, while Avant remained in the front living room area. A few minutes later, the unidentified man returned to the living room, hit Avant in the head with a handgun, and told him to get on the floor, stating, "[T]his is a robbery." Avant heard a number of gunshots from the back area of the home. Upon hearing the shots, the unidentified man stood and ran out of the house. Avant saw Gray stumble from the rear of the house and out the door. As Avant stood in or near the doorway, Gray pointed and fired his handgun at Avant, but missed. Gray and the other man sped away in a vehicle. Jones, who had suffered a number of gunshot wounds, staggered to the front door. Avant called 911 and waited with Jones until emergency personnel arrived. Jones underwent surgery, but died twelve days later from the injuries.

The State charged Gray with felony murder, murder, robbery, attempted murder, unlawful possession of a firearm by a serious violent felon ("possession by a SVF"), and carrying a handgun without a license as a C felony. The possession by a SVF count alleged as the prior violent felony a February 1997 B felony dealing in cocaine conviction. During trial, Gray stipulated that he had been convicted of a serious violent felony within the meaning of IC 35-47-4-5.

2

Gray v. State, 786 N.E.2d 804, 805 (Ind. Ct. App. 2003) ("Gray I") (footnote and citation

to the record omitted; alteration original), trans. denied.

We have further described the subsequent procedural history:

At the conclusion of trial, a jury found Gray guilty on all charges, and the trial court entered convictions for murder, attempted murder, and possession of a firearm by a serious violent felon. Gray was also determined to be an habitual offender. The court imposed an executed sentence of ninety years—sixty years for murder, to run concurrent[ with] a forty-year sentence for attempted murder and a twenty-year sentence for possession of a firearm by a serious violent felon, which was enhanced by thirty years as a result of the habitual offender finding. We affirmed Gray's conviction and sentence in the foregoing direct appeal [in Gray I].

On November 11, 2003, Gray filed a petition for post-conviction relief (PCR). The trial court denied the petition and Gray appealed. We reversed the denial of Gray's PCR petition, overturned his convictions, and ordered a new trial. See Gray v. State, 841 N.E.2d 1210 (Ind. Ct. App. 2006) [("Gray II"), trans. denied]. This decision was based upon our conclusion that Gray received ineffective assistance of appellate counsel for counsel's failure to appeal the trial court's denial of Gray's request for a bifurcated trial (i.e., trying separately the charge that Gray was a serious violent felon).

In August 2006, a second jury trial was conducted and Gray was again found guilty on all counts. He was sentenced to thirty years for attempted murder, ten years for carrying a firearm by a serious violent felon, and four years for carrying a handgun without a license, with those sentences to run concurrently with one another and consecutive to the fifty-five-year sentence imposed for the murder conviction. Thus, Gray received an eighty-five-year executed sentence.

Gray v. State, 871 N.E.2d 408, 411-12 (Ind. Ct. App. 2007) ("Gray III") (footnote

omitted), trans. denied. In Gray III, we affirmed Gray's convictions and sentence

following his second trial.

On July 29, 2008, Gray filed his petition for post-conviction relief, which he

amended in June of 2010. The post-conviction court held an evidentiary hearing on

March 29, 2011. On October 24, the court entered the following findings of fact and conclusions of law denying Gray's petition:

## FINDINGS OF FACT

\* \* \*

5.    Defendant's lead attorney, Stephen Gray, testified that he and co-counsel Todd Ess collaborated on the handling of Defendant's case. Gray testified that he has been a lawyer since 1982, he primarily limits his practice to criminal defense, and he has defended other murder cases in the past.

Mr. Gray stated that he and Mr. Ess jointly reviewed the jury questionnaires before beginning voir dire. Gray stated that it is his personal policy to always peremptorily challenge potential jurors who respond on the juror questionnaires that they have been a victim of a crime because, "When somebody indicates on their questionnaire that they feel like they've been the victim of a crime and they are so passionate about it or so concerned about it that they indicated it on their questionnaire, that to me triggers a flag." Mr. Gray also opined that virtually everyone in our society has at some time in their lives been the victim of crime but less than 10% of people actually mark that they have been victims on juror questionnaires.

Gray also testified regarding his handling of the trial testimony of State's witness, Andrew White. Mr. Gray indicated that White essentially testified that[,] while he and Defendant were being held in a holding cell on completely unrelated matters, Defendant admitted to his involvement in the crimes in this case. Gray stated that it was "absolutely critical" to discredit White's testimony and the original strategy was to use the times noted on a printout of the Chronological Case Summary (CCS) in White's case to attempt to show that White could not have been present with Defendant when the admissions supposedly occurred. Gray noted that his attempts to introduce the CCS were rebuffed by the [S]tate's objection. Consequently, Gray's only recourse to establish witness bias was by cross-examining White regarding the fact that Defendant had allegedly previously attempted to rob him. Gray acknowledged that he was "tremendously troubled" by introducing this evidence, but he reiterated that "I just felt like impeaching Mr. White was absolutely critical to present a defense . . . and when the document was not admitted, I felt like I had to show some kind of bias or motive on his part for testifying the way that he did testify."

6.    Attorney Todd Ess also testified. Ess stated that he remembers the voir dire as it relates to juror Erin Bower, and that he remembers that she had a prosthetic arm. Ess testified that Erin Bower did

4

not check the "victim["] box on the juror questionnaire and that[,] after the trial, he learned that Erin Bower had previously been injured in a highly publicized bomb explosion. Ess stated that if he had known her history he would have moved to exclude her for cause. Although he could not identify what legal cause existed for a challenge, Ess also said that he would have peremptorily struck her from the jury.

7. Ms. Erin Bower was called to testify by the Defendant. Ms. Bower testified that she was a juror on Defendant's second trial. Ms. Bower indic[a]ted that she was injured when she was five years[ ]old, as the result of an incident where a pipe bomb detonated near her while she was shopping with her parents at a K-mart in Indianapolis. She stated that she has no real memories of the actual explosion, but that she lost an eye and part of an arm as a result of the explosion. Ms. Bower acknowledged that the incident attracted widespread media attention, but most of what she knows about it was told to her by somebody else. Despite her injuries, Ms. Bower testified she has had a fairly normal life. She graduated from school, ultimately attaining a doctora[l] degree in physical therapy.

Ms. Bower stated that she did not check the "victim" box on the juror questionnaire[] because "I don't consider myself a victim. It was an accident. I was in the wrong place at the wrong time. I wasn't sought out for it to be me. It just so happened I was there, and[,] unfortunately, it happened. I've moved on. I don't think about it. That's why I checked 'no' on that questionnaire, I would check no again, if this didn't happen." Ms. Bower also testified that prior to the incident neither she nor her family had met the suspected bomb-maker, but she has been told that the bomber committed suicide shortly after the incident. Ms. Bower also stated that there was an investigation of the incident, but to the best of her knowledge, no one was ever arrested and she never had to testify in court.

Ms. Bower specifically testified that, prior to the trial in this case, she had no idea what type of jury she might be called to serve on, and that she had never met Defendant or any of the witnesses in this case. She further testified that she did not know the murder victim or anyone who knew him. Finally, she indicated that her prior experiences related to the bombing did not play any part in her willingness to serve or in her deliberations as a juror.

* * *

## CONCLUSIONS OF LAW

* * *

2.    ***Juror Misconduct***

Defendant's first argument in support of his petition for post conviction relief is that he should receive a new trial because of the alleged misconduct of one of the jurors at his second trial. . . .

Here, Defendant claims that Juror Erin Bower committed gross misconduct[] because he believes that she lied regarding her status as a crime victim. Defendant argues that this probably harmed him because he was denied the opportunity to challenge Ms. Bower for cause. Defendant's assessment of both his burden and his assessment of the evidence on point is wrong.

Contrary to Defendant's claims, there is no "specific substantial evidence" that shows that Ms. Bower was biased, nor any evidence that Defendant was possibly harmed. Ms. Bower was a highly intelligent, poised and credible witness. The Court accepts her testimony that she did not list herself as a victim on the questionnaire because she simply does not see herself as a victim[;] rather[,] she considers that her disabilities are the result of an accident. This is entirely consistent with her description of the events that resulted in her injury; the way that her life has moved beyond the tragedy; and consistent with the way that she answered questions during voir dire. Attempting to mischaracterize either her testimony or her subjective belief in the circumstances of her life is a gross mistreatment of this witness.

Although the fact that the events surrounding Ms. Bower's injuries were highly publicized [that] does not change the analysis. The point is not what Ms. Bower could have written on the questionnaire, but what she did and why. Ms. Bower's explanation for her actions, coupled with her testimony that she had no knowledge or connection with anyone associated with Defendant's case, leads to the inescapable conclusion that she was not motivated by any bias against Defendant. Ms. Bower's testimony regarding her prior lack of knowledge of any of the parties or witnesses, and her testimony that her disabilities played no part in her deliberations as a juror, clearly establish that Defendant suffered no cognizable legal harm by the way that Ms. Bower answered her jury questionnaire.

6

3.   *<u>Ineffective Assistance of Trial Counsel</u>*

Defendant next claims that his trial counsel was ineffective because of the manner in which he cross-examined witness Andrew White. Specifically, Defendant claims that he was irreparably harmed by trial counsel's decision to use certain evidence of prior uncharged crimes. . . .

\* \* \*

Here, Defendant focuses on Attorney Gray's decision to elicit testimony from witness Andrew White regarding an alleged prior uncharged robbery.  The evidence presented at the evidentiary hearing clearly establish[es] that the admission of this evidence was not the result of negligence; rather, it was a carefully considered strategic decision that was made with full awareness of the risks involved.  Mr. Gray testified that he was troubled by the prospect of using the evidence, but he considered it to be vital to the defense to establish that White had a long-standing personal animus against Defendant.  Trial counsel is an experienced criminal defense attorney who was in the best position to evaluate the impact the evidence was having on the jury.  Gray made a strategic decision to discuss this uncharged crime in the context of establishing the witness's personal bias, which was not an impermissible trial tactic in the face of Gray's assessment of its strategic importance.  White's credibility was a central issue at trial and Gray's efforts to undermine that credibility were reasonable. Accordingly, Defendant has failed to meet his burden of proof to establish ineffective assistance of counsel.

Appellant's App. at 162-71 (footnotes and citations to the record omitted).  This appeal ensued.

## DISCUSSION AND DECISION

### Standard of Review

Gray appeals the post-conviction court's denial of his petition for post-conviction relief.  As we have explained:

[The petitioner] bore the burden of establishing the grounds for post-conviction relief by a preponderance of the evidence.  <u>See</u> Ind. Post-Conviction Rule 1(5); <u>Timberlake v. State</u>, 753 N.E.2d 591, 597 (Ind. 2001).  Post-conviction procedures do not afford a petitioner with a super-appeal, and not all issues are available.  <u>Timberlake</u>, 753 N.E.2d at 597.

7

Rather, subsequent collateral challenges to convictions must be based on grounds enumerated in the post-conviction rules. Id. If an issue was known and available, but not raised on direct appeal, it is waived. Id. If it was raised on appeal, but decided adversely, it is res judicata. Id.

In reviewing the judgment of a post-conviction court, appellate courts consider only the evidence and reasonable inferences supporting the post-conviction court's judgment. Hall v. State, 849 N.E.2d 466, 468 (Ind. 2006). The post-conviction court is the sole judge of the evidence and the credibility of the witnesses. Id. at 468-69. Because he is now appealing from a negative judgment, to the extent his appeal turns on factual issues [the petitioner] must convince this court that the evidence as a whole leads unerringly and unmistakably to a decision opposite that reached by the post-conviction court. See Timberlake, 753 N.E.2d at 597. We will disturb the decision only if the evidence is without conflict and leads only to a conclusion contrary to the result of the post-conviction court. Id.

Lindsey v. State, 888 N.E.2d 319, 322 (Ind. Ct. App. 2008), trans. denied. Further: "[a] defendant in a post-conviction proceeding may allege a claim of fundamental error only when asserting either (1) deprivation of the Sixth Amendment right to effective assistance of counsel, or (2) an issue demonstrably unavailable to the petitioner at the time of his or her trial and direct appeal." Id. at 325 (quotations and alterations omitted); see also State v. Hernandez, 910 N.E.2d 213, 216 (Ind. 2009) (same).

Gray argues that the post-conviction court erred for two reasons. First, Gray argues that Juror Bower's alleged misconduct denied him a fair and impartial jury. And, second, he asserts that he was denied the effective assistance of trial counsel. We address each argument in turn.

**Issue One:  Juror Misconduct**

Gary first contends that he was denied his right to a fair and impartial jury when, as he characterizes it, Juror Bower "lied" on her voir dire questionnaire. See Appellant's App. at 168. The State responds that this issue—to the extent it has any merit—was

8

available to Gray on his direct appeal in Gray III and, therefore, it is not available as a free-standing claim of fundamental error in Gray's post-conviction petition. See Lindsey, 888 N.E.2d at 325. We agree with the State.

This issue was available to Gray at the time of his trial and direct appeal. Juror Bower's prosthetic device was readily apparent to Gray's trial counsel during voir dire and, when asked about her interest in physical therapy, Gray answered that she had been involved in an accident when she was younger. Gray's attorneys did not follow up with further questions, even though, at the post-conviction evidentiary hearing, Attorney Ess testified that Juror Bower's prosthetic device raised a "red flag." Post-Conviction Transcript at 23. If this were an issue worth exploring, Gray's attorneys had their opportunity.

Nonetheless, in his reply brief Gray asserts that this issue was "demonstrably unavailable" before the post-conviction proceedings because his counsel "did not learn the juror had actually been the victim of a pipe bombing until after the post-conviction proceedings had begun." Reply Br. at 2. But learning after a direct appeal that a juror did not consider herself a victim but only that she was "in the wrong place at the wrong time" is not on par with, say, newly discovered DNA evidence or new advancements in a relevant field of science.[1] See, e.g., Bunch v. State, 964 N.E.2d 274, 283-97 (Ind. Ct. App. 2012) (discussing post-conviction advancements in a field of science relevant to the defendant's convictions), not yet certified; Pinkins v. State, 799 N.E.2d 1079, 1092 (Ind.

---

[1] While we do not reach the merits of this issue, we note that Gray's attorney testified to the post-conviction court that he was not concerned with excluding actual victims of crimes but only with those who self-identified as victims. Based on his own testimony, Gray's attorney would not have challenged Juror Bower.

Ct. App. 2003) (holding that a post-conviction petitioner may be entitled to a new trial based on a subsequent, favorable DNA test), trans. denied. "The purpose of a petition for post-conviction relief is to raise issues unknown or unavailable to a defendant at the time of the original trial and appeal." Taylor v. State, 840 N.E.2d 324, 330 (Ind. 2006). Issues that are based on "matters dealing with the original trial that were known and available" but not raised may not be raised for the first time in a petition for post-conviction relief. Id. at 331. Gray's attorneys knew of and had available to them the opportunity to inquire into the supposed "red flag" raised by Juror Bower's childhood injuries. Post-Conviction Transcript at 23. Thus, this issue is waived.

Gray further complains about the limited timeframe of voir dire and the need to cover several topics in that limited timeframe. We do not see how this entitles Gray to raise an otherwise available issue for the first time in his petition for post-conviction relief. And Gray's dissatisfaction with the limited timeframe of voir dire is especially dubious when his own attorneys failed to investigate a self-proclaimed and readily apparent "red flag." Id.

Finally, Gray argues that he is entitled to raise this issue as a free-standing claim because the Indiana Supreme Court has addressed free-standing claims of juror misconduct in prior post-conviction appeals. But the only case Gray cites in support of this assertion is State v. Dye, 784 N.E.2d 469 (Ind. 2003). In Dye, a death-penalty case, our supreme court addressed the petitioner's claim of juror misconduct when the juror, among other things, stated during voir dire that she would vote to impose the death penalty automatically upon a finding of guilt. 784 N.E.2d at 476. But the court

concluded that the petitioner was entitled to relief because his counsel "failed to assert a challenge for cause, [which] omission constituted substandard performance with resulting prejudice." Id. That is, the court's holding was based on the petitioner's claim of ineffective assistance of counsel, not on a free-standing claim of juror misconduct.

Gray makes no similar claim in his petition for post-conviction relief. While he does claim ineffective assistance of counsel, which we address below, that claim is unrelated to his free-standing claim of juror misconduct. Because his juror misconduct claim is independent of his claim of ineffective counsel and was otherwise available to him during his trial and direct appeal, Gray may not use the post-conviction process to raise this claim for the first time. See Lindsey, 888 N.E.2d at 325. For thoroughness, however, if we were to reach the merits of the juror misconduct claim we would agree entirely with the post-conviction court's assessment of that claim.

**Issue Two: Ineffective Assistance of Counsel**

Gray also contends that he was denied the effective assistance of trial counsel based on his counsel's decision to impeach a witness for the State by introducing evidence adverse to Gray. A claim of ineffective assistance of counsel must satisfy two components. Strickland v. Washington, 466 U.S. 668 (1984). First, the defendant must show deficient performance: representation that fell below an objective standard of reasonableness, committing errors so serious that the defendant did not have the "counsel" guaranteed by the Sixth Amendment. Id. at 687-88. Second, the defendant must show prejudice: a reasonable probability (i.e., a probability sufficient to undermine

confidence in the outcome) that, but for counsel's errors, the result of the proceeding would have been different. Id. at 694.

The post-conviction court found that Gray's trial counsel made a strategic decision to introduce adverse evidence in order to impeach the State's witness. "[T]he nature and extent of cross-examination is a matter of strategy delegated to trial counsel." Robles v. State, 612 N.E.2d 196, 198 (Ind. Ct. App. 1993). "Deliberate choices by some attorneys for some tactical or strategic reason do not establish ineffective assistance of counsel even though such choices may be subject to criticism or the choices ultimately prove to be detrimental to the defendant." Id. Indeed, "[w]e recognize that even the finest, most experienced criminal defense attorneys may not agree on the ideal strategy or most effective way to represent a client and therefore . . . we will assume that counsel performed adequately, and [we] will defer to counsel's strategic and tactical decisions." Mallory v. State, 954 N.E.2d 933, 936 (Ind. Ct. App. 2011) (citing Smith v. State, 765 N.E.2d 578, 585 (Ind. 2002)).

Here, Gray contends that his trial counsel's impeachment strategy was so unreasonable that it denied Gray his constitutional right to effective counsel. We cannot agree. As the post-conviction court found, Gray's trial counsel reluctantly chose that course of cross-examination only after he was denied his preferred course when the trial court excluded certain evidence. While not his preferred course of action, Gray's counsel "carefully considered [the] strategic decision that was made with full awareness of the risks involved." Appellant's App. at 171. Indeed, Gray's counsel "considered it to be vital to the defense to establish that White had a long-standing personal animus against"

12

Gray.  Id.  Such "[d]eliberate choices . . . for some tactical or strategic reason do not establish ineffective assistance of counsel . . . ."  Robles, 612 N.E.2d at 198.

The post-conviction court's findings of fact and conclusions of law are supported by the record, namely, the testimony of Gray's trial counsel.  Gray's argument on appeal amounts to a request that we simply reweigh that testimony in a manner more favorable to Gray.  We will not do so.  See Lindsey, 888 N.E.2d at 322.  And neither is his trial counsel's deliberate strategy here on par with the multiple references made by the court and the State in Gray's first trial to him being a "serious violent felon," which we held in Gray II to be grounds for a new trial.  841 N.E.2d at 1219-20.  The post-conviction court's judgment on this issue is not clearly erroneous and Gray has not shown that the evidence leads "unerringly and unmistakably to a decision opposite that reached by the post-conviction court."  Lindsey, 888 N.E.2d at 322.

**Conclusion**

In sum, we hold that Gray procedurally defaulted on his juror misconduct claim. We also hold that he has not met his burden of showing that his trial counsel's strategy was unreasonable.  Thus, we affirm the post-conviction court's judgment.

Affirmed.

RILEY, J., and DARDEN, J., concur.