



FILED

Dec 09 2020, 1:41 pm

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE

# Indiana Supreme Court

Supreme Court Case No. 20S-CR-376

## Clinton Loehrlein,
*Appellant/Defendant,*

–v–

## State of Indiana,
*Appellee/Plaintiff.*

Argued: September 3, 2020 | Decided: December 9, 2020

Appeal from the Vanderburgh Circuit Court
No. 82D03-1701-MR-425
The Honorable Robert J. Pigman, Judge

On Petition to Transfer from the Indiana Court of Appeals
No. 19A-CR-737

**Opinion by Justice David**
Chief Justice Rush, and Justices Massa, Slaughter, and Goff concur.

**David, Justice.**

Defendant was charged with the murder and attempted murder of his family members.  At trial, the issue was not whether he committed the crimes but whether he was sane at the time.  The jury rejected his insanity defense and found him guilty.

At issue today is whether one of the jurors committed gross misconduct that probably harmed Defendant, necessitating a new trial.  This juror wrote "N/A," meaning not applicable, in response to questions on her jury questionnaire when those answers should have been a yes.  That is, the juror answered not applicable to questions about both her past criminal history and whether she had herself been victim of a crime.  However, she had in fact been charged with a crime and had been the victim of domestic abuse.  Here we find that the juror did commit gross misconduct but that given the facts and circumstances of this case, including the strong evidence of Defendant's sanity, it is not likely he was harmed.  As such, we affirm the trial court.

## Facts and Procedural History

Under stress and suffering from insomnia, Loehrlein murdered his wife and attempted to murder his two daughters in their home.  Among other things, the State charged Loehrlein with one count of murder and two counts of attempted murder.

Loehrlein's case was set for trial by jury and his counsel hired jury consultant Kaitlin Larimer to assist in jury selection.  In preparing for jury selection prior to voir dire, counsel and Larimer both noted L.W.'s "N/A" responses to several questions on her questionnaire including one asking if she had ever been charged with a crime.  Larimer thought the answer did not make sense, "especially coming from a juror who [was] an attorney…" App. Vol. III, p. 156.  Nevertheless, Larimer wanted to keep L.W. as a juror because L.W. expressed a desire to serve on the jury and was familiar with mental-health issues.  L.W. was selected as a juror and appointed foreperson.

Loehrlein proceeded to trial, where he asserted an insanity defense. Loehrlein hired a clinical psychiatrist to evaluate a prior traumatic brain injury he suffered and its potential impact on him relative to the crimes. While she found no evidence that a brain injury caused him to commit the crimes, she testified that he was suffering from an unspecified depressive disorder prior to his crimes and a brief reactive psychosis at the time of the crimes. She further testified that she believed he was suffering from a mental disease or defect and could not appreciate the wrongfulness of his actions at the time of the crimes. She opined that while he appreciated that his acts were criminally wrong, he did not appreciate that they were morally wrong due to his psychosis.

The trial court appointed two expert doctors to evaluate him. Both court-appointed experts testified that Loehrlein was not suffering from a mental disease or defect and that he could appreciate the wrongfulness of his actions at the time of the attacks.

Loehrlein was convicted as charged. Thereafter, Loehrlein filed a motion to set aside the verdict based on juror misconduct, alleging L.W. falsely answered her juror questionnaire, and the trial court denied said motion.

In a post-conviction deposition, L.W. tearfully discussed her past as a victim of domestic violence and continued to assert that while she had been charged with domestic battery, she still believed not applicable was an appropriate answer to the question about whether she had ever been charged with a crime under the circumstances. Specifically, she testified in her deposition:

> Q.  So number 15, "Have you, any of your immediate family members, or a close friend been charged with or convicted of a crime? If yes, who, when, what & where," and you wrote "N/A"?
>
> A.  Uh—huh.
>
> Q.  Is that the proper answer?

A.     Yes.

Q.     It is?  Okay.  So tell me, it's not applicable?

A.     Right.

Q.     And why is it not applicable?

A.     Because I've never been charged, never been read rights.  I've never been convicted.

Q.     So you've never been charged with a crime?

A.     I mean, there was this little case that was false anyway, got dismissed, so it didn't apply because it was dismissed.

*Id*. at 99-100.

After much back and forth and being presented with the actual charging information against her, L.W. finally stated: "I guess" when asked if it appeared she had been charged with domestic battery.  *Id.* at 105.  She further admitted that she was arrested and went to jail for the charges, that she had an attorney she knew handle the matter for her and that it took months to resolve.

She also disclosed that while she answered "N/A" to a question about her being the victim of a crime, she was in fact the victim of abuse by her ex-husband.  She got very upset when discussing this matter in her deposition.  She admitted that she was worried about embarrassment if she went to the police about the domestic abuse she suffered.

Nevertheless, L.W. maintained that she was fair and impartial during trial.  The trial court denied Loehrlein's motion to set aside the verdict.

Loehrlein appealed, arguing the trial court abused its discretion by denying his motion to set aside the verdict where L.W. withheld this information on her questionnaire.

Our Court of Appeals reversed the trial court. *Loehrlein v. State*, 142 N.E.3d 966, 969 (Ind. Ct. App. 2020). The majority found that the trial court erred in not finding the juror's false answer to a juror questionnaire amounted to gross misconduct that probably harmed Loehrlein. *Id. at* 975. Thus, the court reversed and remanded for a new trial. *Id.* Judge Bailey dissented, arguing that Loehrlein failed to show the trial court abused its discretion in denying his motion by not proving the juror's misconduct probably harmed him. *Id.* at 977 (Bailey, J., dissenting).

The State petitioned for transfer which we granted. Ind. Appellate Rule 58(A).

# Standard of Review

We review a trial court's determination of whether a juror's misconduct entitles a defendant to a new trial for abuse of discretion. *Lopez v. State*, 527 N.E.2d 1119, 1130 (Ind. 1988).

# Discussion and Decision

"Generally, proof that a juror was biased against the defendant or lied during voir dire entitles a defendant to a new trial." *State v. Dye*, 784 N.E.2d 469, 473 (Ind. 2003) (*quoting Warner v. State*, 773 N.E.2d 239, 246 (Ind. 2002)). A defendant seeking a new trial because of juror misconduct must show two things: 1) gross misconduct; and 2) that the gross misconduct probably harmed the defendant. *Id.* We will discuss each of these required elements in turn.

## I. Juror L.W. committed gross misconduct.

There are two Indiana cases that are somewhat analogous to this case. In *State v. Dye*, 784 N.E.2d 469, 471 (Ind. 2003), a death penalty case, jurors were asked if they or a family member had ever appeared in court for any reason other than a traffic offense and also whether they had themselves been a victim of a crime. One juror responded in the negative to both; however, her brother was convicted of two homicides and sentenced to

death, two of her siblings had been arrested and she had an OWI charge herself. *Id*. at 472. She was also the victim of rape. *Id*.

Jurors were also asked if they believed the death penalty should be mandatory for any particular type of crime and this same juror responded that she did not feel the death penalty should be mandatory for any type of crime, but would vote automatically for the death penalty if a person were found guilty of intentional murder. *Id*. at 471. When all the jurors were asked this same question about the death penalty during voir dire, the juror remained silent. *Id*. at 471-72. When asked during voir dire about family members in prison, the juror disclosed only that she had a brother in prison who was now deceased. *Id*. at 472.

During a post-conviction hearing, the juror admitted her brother had received the death penalty and died while he was in prison. *Id.* She further testified that she believed he deserved the death penalty because people who commit murder should receive the death penalty and that she had not mentioned her brother because she did not "think it was anybody's business." *Id*. With regard to her other siblings' charges and her own, she testified that she didn't think about these things when answering the questionnaire. *Id*. Finally, she testified that she "tried to forget" her rape. *Id*.

The post-conviction court concluded that the juror "made omissions and false statements on her jury questionnaire and during voir dire, that those responses amounted to gross misconduct, and probably harmed the defendant by denying him a fair trial." *Id*. at 473. Our court affirmed. *Id*. at 477. While we were concerned about potential ineffective assistance of counsel because defense counsel did not follow-up on the juror's answer on her questionnaire about believing the death penalty should be automatic for intentional murder, the post-conviction court did not address this issue, instead focusing on the juror misconduct. *Id*. at 476. We found that the post-conviction court was in the best position to assess the weight of the evidence and credibility of the witnesses and, given the juror's omissions and false statements as well as her strong beliefs regarding the death penalty, the post-conviction court's decision should be upheld. *Id*.

In *Warner v. State*, 773 N.E.2d 239, 246 (Ind. 2002), a murder case, one juror responded that none of her close family members were victims of a crime.  However, the juror's half-sister had been murdered within the last 2 years.  *Id*.  She also did not disclose this fact during voir dire.  *Id.*  When asked why the juror did not disclose this information during voir dire she responded that she "just blanked that out" and as for her juror questionnaire, "[t]his was sent to where I used to live and my old roommate had it for a while and evidently what I did I just got it and just hurried up and filled it out...."  *Id*.  She further testified that her half-sister's murder did not impact her ability to be fair and impartial and that: "I mean, there is nothing I can do about it, I can't change what happened to her or let my feelings towards anybody else go towards anything else. I don't do that."  *Id*.  The trial court determined that the juror did not deliberately withhold this information, that the juror was not biased and that defendant received a fair trial.  *Id*.

Our Court affirmed the trial court, finding that although the juror should not have withheld this information, the omission did not amount to gross misconduct.  *Id*. at 246-47.  Further, because of the ample evidence of the defendant's guilt, we saw little likelihood that this juror's omission impacted the verdict.  *Id*. at 247.

Here, L.W. was asked two questions in the juror questionnaire that she provided "N/A" responses to.  That is, question number fifteen asked: "HAVE YOU, ANY OF YOUR IMMEDIATE FAMILY MEMBERS, OR A CLOSE FRIEND BEEN CHARGED WITH OR CONVICTED OF A CRIME? IF YES, WHO, WHEN, WHAT & WHERE:" App. Vol. III, p. 31. L.W. answered "N/A."  *Id*.

Similarly, question number sixteen asked: "HAVE YOU, ANY OF YOUR IMMEDIATE FAMILY MEMBERS, OR A CLOSE FRIEND EVER BEEN A WITNESS OR A VICTIM IN A CRIMINAL MATTER.  IF YES, WHO, WHEN, WHAT & WHERE:"  Again, L.W. answered "N/A."  *Id.*

However, L.W. had been charged with domestic battery and she had also been the victim of it.  Thus, her responses on the jury questionnaire should have been two yeses.  Her explanation could have been worked out during voir dire or even jotted on the questionnaire.  Instead, L.W.

effectively dodged these questions, noting they did not apply to her when they clearly did.

L.W. compounded her omissions because during her post-trial deposition, she became very defensive when asked why she thought "N/A" was an appropriate response rather than a straightforward "yes." Like the juror in *Dye*, it was clear that she did not believe this information was anyone's business. Indeed, she was worried about her professional reputation in the legal community should anyone learn that she was (wrongfully) charged with domestic battery and was the victim of it. While it is understandable that this is a sensitive area for some potential jurors, responding "N/A" was not the appropriate way to handle this. And unlike the juror in *Warner*, who just admitted that she answered the questionnaire hastily and blanked out during voir dire, L.W. went to great lengths to defend her answers on the questionnaire during her deposition.

We find L.W.'s conduct even more egregious because she is an attorney who had previously handled some criminal matters and as such, she should have known better. In this regard, her conduct is more egregious than the juror in *Warner*. Perhaps we would be in a different position had she not been an attorney or even if she was more open and honest during her post-trial deposition. She was not though. Because her answers on the jury questionnaire were cryptic[1] and her demeanor during her post-trial deposition was defensive and evasive, we find that her misconduct was gross.

---

[1] We would be remiss if we did not note that counsel was in the best position to address L.W.'s strange answers on her questionnaire during voir dire. If counsel fails to delve into matters such as these or the trial court does not seek additional clarity, this could turn out to be a tragic mistake that cannot be rectified on appeal.

## II. Despite L.W.'s gross misconduct, it is unlikely that Loehrlein was harmed.

While we find that L.W. committed gross misconduct, that does not end our analysis of whether Loehrlein is entitled to a new trial. We must now determine whether Loehrlein was probably harmed. We find that under the circumstances of this case, it is unlikely that he was.

The issue during trial wasn't whether Loehrlein committed the offenses but rather whether he was sane at the time. Although his expert testified that Loehrlein was suffering from a mental disease or defect and could not appreciate the wrongfulness of his actions, she based this opinion on the fact that she believed there was a difference between legal and moral wrong. She conceded he knew what he was doing was legally wrong.

Further, both court appointed experts here testified that Loehrlein was not suffering from a mental disease or defect at the time of the crime and was able to appreciate the wrongfulness of his actions.[2] Finally, although L.W. committed gross misconduct, the one thing she was unequivocal about during her deposition was that she was impartial.

We would perhaps be in a different situation if the evidence were closer regarding Loehrlein's sanity or if the issue to be determined at trial was whether he harmed his family. But as it stands, it is not likely L.W.'s misconduct harmed Loehrlein at trial because L.W.'s prior personal experience with domestic violence is not directly related to a sanity inquiry and further, she testified that she was impartial.

The standard of review also guides us here. Just as we deferred to the trial court's determinations in *Dye* and *Warner*, here too we must rely on our trial court to assess the weight of the evidence and credibility of the witnesses. The trial court, having heard the evidence in a post-trial

---

[2] In Indiana, "[a] person is not responsible for having engaged in prohibited conduct if, as a result of mental disease or defect, he was unable to appreciate the wrongfulness of the conduct at the time of the offense." Ind. Code § 35-41-3-6.

hearing and after presiding over the trial and voir dire denied Loehrlein's request for a new trial based on juror misconduct. Given the facts and circumstances of this case, we find that the trial court did not abuse its discretion because while L.W. committed gross misconduct, Loehrlein has not demonstrated that this misconduct probably harmed him.

## Conclusion

We affirm the trial court.

Rush, C.J., and Massa, Slaughter, and Goff, JJ., concur.

ATTORNEY FOR APPELLANT
Stacy R. Uliana
Bargersville, Indiana

ATTORNEYS FOR APPELLEE
Curtis T. Hill, Jr.
Attorney General of Indiana

Matthew B. MacKenzie
Deputy Attorney General
Indianapolis, Indiana