**Joshua WARNER, Appellant (Defendant),**

v.

**STATE of Indiana, Appellee (Plaintiff).**

**No. 71S00–0011–CR–622.**

Supreme Court of Indiana.

Aug. 15, 2002.

---

240

Jeffrey E. Kimmell, South Bend, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Arthur Thaddeus Perry, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

SHEPARD, Chief Justice.

Joshua Warner was found guilty of the murder and attempted robbery of Jennifer Rokop and sentenced to sixty-five years imprisonment. Warner challenges the State's addition of two charges following a mistrial. We reverse his attempted robbery conviction on these grounds, but otherwise affirm.

### Facts and Procedural History

The evidence at trial revealed that Warner assaulted Rokop in her South Bend home on the morning of May 28, 1999. Rokop's five-year-old daughter Shelby was awakened by the attack. Shelby went downstairs and observed a man near her mother. Shelby dressed herself and walked a quarter mile to her father's apartment. Her father called the police, who found Rokop lying on the floor when they arrived. Rokop died from a knife wound that severed her windpipe and partially severed her jugular vein.

The State charged Warner with Rokop's murder. On the second day of his first trial, the State disclosed additional footprint evidence that had been inadvertently overlooked. Warner moved for mistrial, which the court granted. Before the second trial began, the State asserted that it had discovered new evidence that Warner's crime also involved an attempted robbery. The State amended its information soon thereafter, adding charges of felony murder and attempted robbery.

A jury found Warner guilty on all three counts and the court sentenced him to consecutive terms of fifty-five years for murder and ten years for attempted robbery.[1]

### I. Adding Charges After a Mistrial

Warner claims it was improper to permit the State to add charges of felony murder and attempted robbery after the defense successfully sought a mistrial. After the mistrial occurred, a previously unknown witness contacted the State and offered to testify that Warner intended to rob Rokop during the commission of the crime. The prosecution later argued that this was newly discovered evidence entitling it to add the two additional counts. The court allowed the amendment.

Indiana Code Ann. § 35–34–1–5(c) (West 2000) provides that "[u]pon motion of the prosecuting attorney, the court may, at

---

1. The court dismissed the felony murder conviction on double jeopardy grounds.

any time before, during, or after the trial, permit an amendment to the indictment or information in respect to any defect, imperfection, or omission in form which does not prejudice the substantial rights of the defendant."

Amendments that prejudice a defendant's substantial rights have been the subject of considerable judicial examination. In *Murphy v. State*, 453 N.E.2d 219, 223 (Ind.1983), charges of burglary and theft were filed against the defendant. At the first trial, the defense moved for a mistrial because of a State witness's improper identification procedures, and the trial court granted the motion. *Id.* The State subsequently added an habitual offender charge, raising the possible sentence from twelve to forty years. *Id.* at 223, 226–27. No new evidence was discovered between the mistrial and the amendment. *Id.* at 227.

■ We held that the State could not bring more serious charges against the defendant when nothing has occurred except the successful exercise of the right to a fair trial. *Id.* Elaborating on the holding, Justice Prentice wrote:

> Under such circumstances, fundamental fairness precludes a requirement that Defendant show vindictive motivation or that the State be permitted to show its absence. Were we to hold otherwise, an accused in Defendant's predicament would be required to elect whether he would submit to a trial had without due process of law or to a trial wherein there was a potential for a much more severe penalty. Our concept of justice simply will not sanction an implicit form of bargaining where the accused must purchase due process of law.

*Id.* In other words, unless there is new evidence or information discovered to warrant additional charges, the potential for prosecutorial vindictiveness is too great for courts to allow the State to bring additional charges against a defendant who successfully moves for a mistrial.[2]

The State's argument that the newly discovered witness warranted the additional charges falls flat. This new witness was never called to testify or provide information at Warner's second trial. Instead, the State argued that three pieces of evidence established the attempted robbery charge: (1) Warner's own statement that his alleged acquaintance "started to rob her," (R. at 2343); (2) Warner's drug addiction and lack of money, (R. at 2344); and (3) Warner's statement to his girlfriend's mother that his motive was robbery, (R. at 1867, 2344–45). The State had all of this information before the mistrial.

New evidence will permit the State to amend its charging information in an appropriate circumstance. This is not one of them. It is central to the theory in *Murphy* that if new evidence is discovered, it contribute to the State's case against the defendant. Whatever new information the State may have received concerning Warner's alleged attempted robbery, it chose not even to use it at trial.

Having known of the attempted robbery evidence it used at the second trial all along, notions of fundamental fairness dictate that it was improper for the State to add the new counts after Warner exercised

---

**2.** In *Blackledge v. Perry*, 417 U.S. 21, 28, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974), *overruled on other grounds, Bordenkircher v. Hayes*, 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978), the U.S. Supreme Court expressed similar views, holding that a defendant "is entitled to pursue his statutory right to a trial de novo, without apprehension that the State will retaliate by substituting a more serious charge for the original one, thus subjecting him to a significantly increased potential period of incarceration."

his right to a fair trial. The court erred in permitting the amendment.[3]

■ In a related argument, Warner contends that re-trial constituted double jeopardy because the State filed additional charges and previewed his defense strategy. The events that led to the mistrial revolved around the State's identification of footprints at the crime scene. (*See* R. at 864–98.) Prior to trial, the defense was led to believe that a bloody footprint found outside Rokop's residence belonged to someone other that Warner. (R. at 864–65; Appellant's Br. at 16.) On the second day of the initial trial, Warner's attorney was notified of a second set of footprints that were still in the process of being identified but apparently did not belong to Warner. (R. at 863–64, 869, 876.) Based upon this surprise evidence, the defense successfully moved for a mistrial. (R. at 864–98.)

■ A defendant forfeits the right to raise a double jeopardy claim if he moves for or consents to a mistrial "unless the motion for mistrial was necessitated by governmental conduct 'intended to goad the defendant into moving for a mistrial.'" *Willoughby v. State*, 660 N.E.2d 570, 576 (Ind.1996) (citations omitted). The State must intentionally force the defendant into moving for a mistrial before it is prohibited from a second prosecution. *Id.*

The trial court explicitly found that the State did nothing intentional to provoke Warner into seeking a mistrial. (R. at 895.) Warner's appellate counsel concedes as much, but argues that "the State clearly was responsible for the circumstances which forced defense counsel into moving for a mistrial." (Appellant's Br. at 17.) This is not enough. Both the defense and the State erroneously believed, due to a

mislabeling at the police laboratory, that only one unidentified set of footprints existed. (R. at 865, 877.) As soon as the State discovered this misunderstanding, it notified the defense. (R. at 873.) The second trial did not violate double jeopardy.

## II. Bloody Gauze on the Trash Can

■ Warner next argues that police violated the Fourth Amendment by improperly seizing evidence from a trash can next to his house and by searching his premises with a warrant not supported by probable cause.

In the hours following Rokop's murder, police learned that Warner and Rokop had dated a year earlier. Rokop's acquaintances suggested that Warner was someone who might have reason to harm her. Police twice went to Warner's residence seeking to question him about the murder. On the initial visit, the police left a message with Warner's girlfriend. On their second visit, they knocked on the front and side doors but received no answer.

Warner kept his trash can near the side door; it was partially concealed from view by a three-foot, L-shaped fence. (R. at 1633, 1639.) One policeman noticed a "wad of gauze" that was stained reddish-brown sitting atop the can. (R. at 1634.) Both officers who were on the scene stated that based on their experience, they believed the gauze was blood-stained. (R. at 87, 1649.)

Police called an evidence technician to Warner's home to test the stained gauze; it tested positive for blood. (R. at 1636.) Based upon this information, the police obtained a search warrant and discovered blood droplets in the house and bloody clothing hidden in the trash. Tests revealed Rokop's blood on the clothing.

---

**3.** We therefore need not address Warner's claim that insufficient evidence supported his

attempted robbery conviction. (Appellant's Br. at 13.)

Over Warner's motion to suppress and timely objections, the State used all of this evidence at trial.

▇ The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Searches and seizures "conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well delineated exceptions." *Minnesota v. Dickerson*, 508 U.S. 366, 372, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993) (citations omitted).

▇ One such exception is the plain view exception, which provides that if police are lawfully in a position from which to view the object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant. *Horton v. California*, 496 U.S. 128, 135–37, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990).

This case fits within the plain view exception. The police were lawfully in a position to view the evidence. After twice finding Warner away from home, they knocked on the side door, and from there saw the gauze in plain view. The police were legitimately on the premise to question Warner as part of their initial investigation. The plain view doctrine is applicable when police are "not searching for evidence against the accused, but nonetheless inadvertently come across an incriminating object." *Id.* at 135, 110 S.Ct. 2301 (citations omitted). Moreover, the incriminating character of the evidence was immediately apparent to the police. Upon viewing the gauze, both believed that the gauze was soaked with blood. (R. at 87, 1649.) Having viewed the evidence in a

public place from a lawful vantage point and having immediately recognized its incriminating character, the police properly seized the bloody gauze.

▇ Warner's claim that the search warrant used to discover his bloody clothing hidden in the garbage was not supported by probable cause is also without merit.

▇ To be valid, a warrant and its underlying affidavit must comply with the Fourth Amendment prohibition on unreasonable searches and seizures, as well as Indiana constitutional and statutory law. *Gray v. State*, 758 N.E.2d 519, 521 (Ind. 2001). The task of the issuing magistrate is "simply to make a practical, common-sense decision whether, given all the circumstances set forth before him ... there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

▇ As the reviewing court, our duty under the Fourth Amendment is to determine whether the magistrate issuing the warrant had a "substantial basis" for concluding that probable cause existed. *Id.* at 238–39, 103 S.Ct. 2317. While we give significant deference to the magistrate's determination, our search for substantial basis must focus on whether "reasonable inferences drawn from the totality of the evidence support the determination." *Houser v. State*, 678 N.E.2d 95, 99 (Ind.1997).

When they sought the search warrant, police had the following information: (1) a bloody crime scene in which the victim's jugular vein was partially severed, (R. at 12); (2) statements from Rokop's friends that Rokop and Warner had dated a year earlier, (R. at 12–13, 1628–29, 1647); and

(3) stained gauze from Warner's residence that tested positive for the presence of blood, (R. at 13, 1636).[4] Given this information, the judge had a substantial basis for concluding that a fair probability existed that contraband or evidence of the crime would be found at Warner's residence. The court properly denied Warner's motion to suppress the evidence collected under the search warrant.

### III. Allegations of Juror Misconduct

Warner next argues that he is entitled to a new trial because of juror misconduct. In answering a questionnaire, one juror responded that none of her close family members had been victimized by a serious crime. The juror also remained silent when the court asked prospective jurors a similar question.[5] It later came to light that the juror's half-sister had been murdered a year or two earlier.

Generally, proof that a juror was biased against the defendant or lied during voir dire entitles a defendant to a new trial. *Lopez v. State*, 527 N.E.2d 1119, 1130 (Ind.1988), *grant of post-conviction relief rev'd in part by* 676 N.E.2d 1063 (Ind.Ct.App.1997). A defendant seeking a new trial because of juror misconduct must show gross misconduct that probably harmed the defendant. *Reed v. State*, 479 N.E.2d 1248, 1251 (Ind.1985). We review the trial judge's determination on these points for abuse of discretion. *Lopez*, 527 N.E.2d at 1130.

After the juror's omission was discovered, the trial court questioned her on the matter:

Court: Did [your sister's murder] in any way affect your ability to render a fair and impartial verdict, based upon the evidence that you heard in court and the law upon which you were instructed?

Juror: No, it did not.

Court: Is there a reason that you ... did not disclose that information to the Court or to the attorneys during the voir dire that occurred on May 22?

Juror: No. After—I guess I just blanked that out. I mean, there is nothing I can do about it, I can't change what happened to her or let my feelings towards anybody else go towards anything else. I don't do that.

. . .

Court: Is there a reason that you answered the question negatively in the jury questionnaire?

Juror: I think I might have just—This was sent to where I used to live and my old roommate had it for a while and evidently what I did I just got it and just hurried up and filled it out. . . .

(R. at 353–54.)

After considering the defense's argument and reviewing the juror's responses, the court concluded that the juror did not deliberately withhold this information, that she was not biased against Warner, and that Warner received a fair trial. (R. at 482.)

We are not persuaded that the trial court abused its discretion. Although it was wrong for the juror to omit this infor-

---

4. Although the probable cause affidavit supporting the search warrant is not in the record, testimony at trial reveals that at the very least this information was known to the police before seeking the search warrant. It is reasonable to conclude that this information supported the affidavit.

5. The precise question asked was: "Have any of you ... [had] close friends or family members that have been victims of a crime that you think would have some impact on you?" (R. at 427–28.)

mation from her questionnaire, we cannot conclude that the omission rose to the level of gross misconduct. She testified under oath that this prior incident did not affect her impartiality. Moreover, given the amount of evidence presented by the State, Warner was not harmed. Rokop's daughter described a lone assailant substantially similar to Warner's appearance; Warner's knife was embedded in Rokop's neck; he admitted being at the scene of the crime; and police found Warner's clothes covered with Rokop's blood hidden in his trash. We see very little likelihood that the juror's omitted response in any way affected the verdict.

### IV. Continuance at Sentencing

 Warner sought a postponement of the sentencing hearing so that he could obtain a psychiatric evaluation to assess his risk of future dangerousness. The court denied this request, stating that the psychological profile would not "be helpful for my determination." (R. at 2451.) Warner contends this was error.

The determination of whether to grant a continuance lies within the sound discretion of the trial court when the motion is not based upon statutory grounds. *Brewer v. State*, 275 Ind. 338, 368, 417 N.E.2d 889, 906 (1981), *cert. denied*, 458 U.S. 1122, 102 S.Ct. 3510, 73 L.Ed.2d 1384 (1982). There is a strong presumption that the trial court properly exercised its discretion. *Elmore v. State*, 657 N.E.2d 1216, 1218 (Ind.1995).

In this case, Warner contends that a continuance was required to permit an investigation into his potential for future dangerousness and his prior mental condition. Nevertheless, he tells us nothing to indicate what he thinks the evaluation would have uncovered or how it would have affected his sentence. As a result of our decision to reverse his attempted robbery conviction, Warner will receive the presumptive term of fifty-five years for murder. Counsel has not suggested any particular way that a psychological evaluation would have led to a lesser sentence. We find no abuse of discretion here. *See Brewer*, 275 Ind. at 368, 417 N.E.2d at 906 (denial of motion grounded upon sheer speculation that some benefit might flow is not arbitrary or abusive).

### Conclusion

We remand to the trial court with instructions to vacate Warner's conviction for attempted robbery. In all other respects, we affirm the judgment.

DICKSON, SULLIVAN, BOEHM, and RUCKER, JJ., concur.