## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Oct 23 2018, 7:56 am

**C L E R K**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Mark Small
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Henry A. Flores, Jr.
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Nicholas Carter,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

October 23, 2018

Court of Appeals Case No.
12A02-1711-CR-2770

Appeal from the Clinton Superior Court

The Honorable Justin Hunter, Judge

Trial Court Cause No.
12D01-1612-F6-1119

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Defendant, Nicholas Carter (Carter), appeals his convictions for two counts of domestic battery, both as Level 6 felonies, Ind. Code §§ 35-42-2-1.3(a)(1), (b)(1)-(2); and criminal trespass, a Class A misdemeanor, Ind. Code § 35-43-2-2(b)(2).

We affirm.

# ISSUES

Carter presents us with three issues on appeal which we consolidate and restate as:

(1) Whether his substantial rights were prejudiced when the trial court permitted the State to file additional charges after a mistrial; and

(2) Whether the State produced sufficient evidence to sustain his convictions.

# FACTS AND PROCEDURAL HISTORY

Carter and his wife (Mother) have two minor children (the children), who were seven and eight years old in December of 2016. On December 24, 2016, the children were at the home of Mother's aunt (Aunt) in Fickle, Indiana, preparing for a family holiday party which was to start around 3:00 p.m. Also present in the home was Mother's eighty-seven-year-old grandmother (Grandmother). Carter and Mother arrived to retrieve the children around 2:00 p.m. Mother went into Aunt's home, and Carter stayed in their car outside.

[5] The children had made a gingerbread house with Aunt the previous evening, and one of the children went outside to bring Carter in to see it. Aunt heard Carter's voice and wondered why he was there because Aunt did not want Carter in her home. Aunt went into the living room and asked Mother why Carter was there. Carter heard their conversation, became irate, and told Aunt that, if he were not allowed to be there, no one could stay.

[6] Carter went to the dining room and picked up the gingerbread house. Aunt would not allow Carter to take the gingerbread house and removed it from his hands. Carter then struck Aunt's arm with his hand. The children were watching when this occurred but sometime thereafter locked themselves in the bathroom, which was approximately six feet away. Aunt told Carter to "get out of [her] house" three times. (Transcript Trial II Vol. I, p. 192). Carter screamed at Aunt while standing close to her face, and Aunt shoved Carter. Carter grabbed Aunt by the throat and shoved her from the dining room to the living room. Carter held Aunt with one hand by her throat on the living room sofa and hit her with his other hand on her chest and head with a closed fist.

[7] Aunt freed herself from Carter and attempted to call 9-1-1. She misdialed and instead telephoned her son (Son), who lived next door. Mother and Carter went out the front door onto the porch. Aunt stood in the doorway and stated that she was calling 9-1-1 and child protective services. Carter grabbed Aunt, pulled her onto the porch and repeatedly struck her head as she was pinned against the porch railing. Carter left the porch as Son arrived from next door. Carter asked Son, "you want a piece of me?" (Tr. Trial II Vol. I, p. 81). Carter

attempted to strike Son but fell on the ground. Son tackled Carter and held him until Carter ceased struggling. Shortly thereafter, law enforcement arrived. One of the children told an investigating officer that she saw Carter "on" Aunt and "Daddy get Aunt." (Tr. Trial II Vol. I, p. 162). Aunt refused treatment that afternoon. Carter was transported to the hospital for injuries he sustained while tussling with Son. By the next day, Aunt had developed several bumps on her head and bruises on her throat, head, arms, and hands.

[8] On December 27, 2016, the State filed an information charging Carter with domestic battery as a Level 6 felony and criminal confinement as a Level 6 felony. On August 9, 2017, a jury found Carter not guilty of criminal confinement, but the jury could not reach a verdict as to the domestic battery charge. The trial court declared a mistrial. On August 11, 2017, the State sought and was granted leave to file additional counts against Carter for a second count of domestic battery, a Level 6 felony[1]; strangulation, a Level 6 felony; and criminal trespass, a Class A misdemeanor. Carter sought the dismissal of these charges, arguing in a pre-trial motion that amendments of substance were not permissible after trial commenced and that to "allow for amendment after a partial verdict and placing [Carter] in jeopardy would prejudice [Carter's] substantial rights and protections under the United States and Indiana Constitutions." (Appellant's App. Vol. II, p. 35). The trial court denied this pre-trial dismissal motion as well as Carter's motions for rehearing

---

[1] The State subsequently filed an information alleging that Carter had a previous conviction for battery.

and directed verdict based upon similar arguments. Carter's second jury trial took place on October 31 and November 1, 2017. Prior to the jury rendering its verdicts, Carter admitted that he had a prior battery conviction. The jury acquitted Carter of strangulation but found him guilty of the remaining charges. On November 27, 2017, the trial court sentenced Carter to two concurrent terms of eighteen months for the domestic battery convictions[2] and to sixty days for the criminal trespass conviction, also to be served concurrently. The trial court suspended one year of Carter's aggregate eighteen-month sentence to probation.

[9] Carter now appeals. Additional facts will be provided as necessary.

# DISCUSSION AND DECISION

## I. *Amendment of Charging Information*

[10] Carter contends that the trial court erred when it allowed the State to amend the charging information to add three new charges after his first trial ended in a mistrial because these were substantive amendments that prejudiced his substantial rights. The State conceded at trial and concedes on appeal that the amendments were indeed substantive, but it argues that trial court properly

---

[2] The trial court "merged" the conviction on the newer domestic battery charge with the conviction for domestic battery that had been filed initially. (Appellant's App. Vol. III, p. 8). However, the trial court entered judgment of conviction for both batteries, and the abstract of judgment reflects that Carter was sentenced for both batteries.

allowed the amendments because Carter's substantial rights were not prejudiced.

[11] Charging informations may be amended as to matters of substance at any time before the commencement of trial as long as the defendant's substantial rights are not prejudiced. Ind. Code § 35-34-1-5(b). "A defendant's substantial rights include a right to sufficient notice and an opportunity to be heard regarding the charge." *Mannix v. State*, 54 N.E.3d 1002, 1009-10 (Ind. Ct. App. 2016) (quotation omitted). "Ultimately, the question is whether the defendant had reasonable opportunity to prepare for and defend against the charges." *Id*.

[12] The State filed its motion to amend the information on August 11, 2017, and Carter's second jury trial took place approximately two and one-half months later. Although the period between the amendment of the information and trial was not an especially long one, Carter does not claim that he had inadequate notice of the new charges or that the preparation of his defense was prejudiced by the timing of the amendment. Rather, he asserts that his substantial rights were prejudiced because the trial court erred as a matter of law by allowing the addition of new charges after a mistrial and because the amendments violated state[3] constitutional protections against double jeopardy.

---

[3] Although he mentions the Fifth Amendment, Carter fails to develop a separate federal double jeopardy analysis with cogent legal authority or citations to the record, and, thus, he has waived that claim. Indiana Appellate Rule 46(A)(8); *see also Simms v. State*, 791 N.E.2d 225, 231 n.2 (Ind. Ct. App. 2003) (finding Simms' vague Fifth Amendment double jeopardy claim waived for failure to make a cogent argument).

[13] We find Carter's claim of prejudice as a matter of law to be unavailing. To support his claim, Carter relies upon *Warner v. State*, 773 N.E.2d 239 (Ind. 2002). Warner faced a murder charge and successfully moved for mistrial after potentially exculpatory evidence was late-disclosed by the State during trial. *Id.* at 242. The State then sought to file additional felony murder and attempted robbery charges against him based upon spurious claims of newly found evidence. *Id.* at 242-43. Our supreme court held that, in the absence of newly found evidence, the State may not bring new charges against a defendant who successfully moves for a mistrial because "the potential for prosecutorial vindictiveness is too great . . ." *Id.* at 243. *Warner*'s holding has not been extended to the filing of additional charges after mistrial has been declared simply because a jury has been unable to reach a verdict, and we see no reason to do so.

[14] Carter's claims pertaining to double jeopardy, whether brought as a claim of prejudice as the result of the amendment of the charging information or whether brought as a freestanding claim challenging his convictions, are equally unavailing. At the outset we note that Carter claims in his Statement of the Issues and in the heading of this section of his argument that he was acquitted of strangulation at his first trial. This is factually incorrect, as he was not charged with strangulation in the first set of charges. Carter provides us with some substantive law pertaining to an "actual evidence" analysis under Article I, Section 14, of the Indiana Constitution. However, the lion's share of his argument pertains to addressing the trial court's findings regarding the filing of

the strangulation charge for the second trial, which, as noted by the State, is a moot issue since Carter was acquitted of that charge at his second trial. *See Jones v. State,* 847 N.E. 2d 190, 200 (Ind. Ct. App. 2006) (holding that a case is moot when a court is unable to render effective relief to a party), *trans. denied*.

[15] The only other argument Carter offers on this issue is that "[t]he evidence upon which the jury relied, or could have relied, in the second trial as to Battery was the same evidence as that upon which the first jury had acquitted Carter for confinement." (Appellant's Br. p. 20). We find this argument to be unpersuasive for at least two reasons. It is unclear to us if Carter challenges both of his battery convictions or simply the conviction resulting from the newer battery charge. More importantly, it was Carter's burden to develop his "actual evidence" double jeopardy argument. *See Richardson v. State*, 717 N.E.2d 32, 53 (Ind. 1999) ("[A] *defendant must demonstrate* a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense.") (emphasis added). This necessitates an examination of the evidence actually presented at trial. *Id.* In addition, a defendant may develop his "actual evidence" argument by referencing the charging informations, any instructions provided to the jury, and the arguments of counsel. *Hunter v. State,* 72 N.E.3d 928, 934 (Ind. Ct. App. 2017), *trans. denied*. Here, Carter failed to substantiate his "actual evidence" argument as it pertained to his battery conviction(s) with any reference to the evidence actually presented at either of his trials, the charging

informations, jury instructions, or argument of counsel before the jury. Therefore, Carter has failed to demonstrate that he was prejudiced by the filing of additional charges or that any of his convictions violated double jeopardy prohibitions.

## II. *Sufficiency of the Evidence*

[16] Carter contends that the State failed to prove beyond a reasonable doubt that Aunt excluded him from her property to sustain his conviction for criminal trespass or that one of the children was where she could see or hear the offenses to sustain one of his battery convictions. It is well-settled that

> [w]hen an appeal raises a sufficiency of evidence challenge, we do not reweigh the evidence or judge the credibility of the witnesses, and we respect a fact-finder's exclusive province to weigh conflicting evidence. We consider only the probative evidence and the reasonable inferences that support the verdict. We will affirm if the probative evidence and reasonable inferences drawn from the evidence could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt.

*Phipps v. State*, 90 N.E.3d 1190, 1195 (Ind. 2018) (citations and quotations omitted).

### A. *Criminal Trespass*

[17] The State charged Carter with criminal trespass in relevant part as follows:

> [O]n or about December 24, 2016 in Clinton County, State of Indiana, [Carter], not having a contractual interest in the property, did knowingly or intentionally refuse to leave the real

property of [Aunt], after having been asked to leave by [Aunt] or [h]er agent.

(Appellant's App. Vol. II, p. 33). Thus, the State was required to prove that Carter refused to leave Aunt's property after Aunt or her agent asked Carter to leave. Aunt testified at trial that, after Carter initially struck her, she told him to "get out of [her] house" three times. (Tr. Trial II Vol. I, p. 192). Carter then yelled at Aunt, struck Aunt in the living room and on the porch, and engaged Son in a physical confrontation in the yard of Aunt's home. Based on this evidence, we conclude that the State proved beyond a reasonable doubt that Carter refused to leave Aunt's home after she asked him to do so.

## B. *Battery*

The State charged Carter with battery in relevant part as follows:

> [O]n or about December 24, 2016 in Clinton County, State of Indiana, [Carter] did knowingly or intentionally touch [Aunt], a family or household member in a rude, insolent, or angry manner by punching and choking; [Carter] committed said offense in the presence of a child less than 16 years of age, [one of the children], knowing that the child was present and might be able to see or hear the offense.

(Appellant's App. Vol. II, p. 12). Carter only challenges the sufficiency of the evidence supporting the jury's conclusion that he committed the battery in the presence of one of the children. For purposes of the battery statute, 'presence' is

defined as "knowingly being within either the possible sight or hearing of a child." *True v. State*, 954 N.E.2d 1105, 1111 (Ind. Ct. App. 2011) (emphasis omitted). No child actually has to perceive the battery for the State to prove the offense; it is only necessary that there was the possibility that a child might see or hear it. *Id.*

[19] Here, the evidence revealed that the children, who had just been showing Carter the gingerbread house, were present and watching when Carter initially struck Aunt on the arm in the dining room. The children then locked themselves in the bathroom, which was located six feet away from the dining room of Aunt's home, which Grandmother characterized at trial as "not very big." (Tr. Trial II Vol. I, p. 112). The dining room and living room were not separated. One of the children reported that "Daddy got Aunt," and that she saw Carter "on" Aunt. (Tr. Trial II Vol. I, p. 162). We conclude that this evidence supports a reasonable inference that one of the children actually witnessed Carter batter Aunt in the dining room and that it was also possible that one of the children heard Carter continue to batter Aunt in the living room after the child locked herself in the bathroom. Carter merely directs us to evidence in the record that does not support the jury's conclusion, which is unpersuasive given our standard of review. *Phipps*, 90 N.E.3d at 1195. The State produced sufficient evidence to support Carter's convictions for criminal trespass and domestic battery beyond a reasonable doubt.

# CONCLUSION

Based on the foregoing, we conclude that Carter's substantial rights were not prejudiced by the addition of charges after his first trial resulted in a mistrial due to a hung jury and that the State produced sufficient evidence to support his convictions for criminal trespass and domestic battery in the presence of a child.

Affirmed.

Vaidik, C. J. and Kirsch, J. concur