## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 27 2018, 9:55 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Stacy R. Uliana
Bargersville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Justin F. Roebel
Supervising Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Shakka Eugene Brogdon,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | December 27, 2018<br><br>Court of Appeals Case No.<br>18A-CR-734<br><br>Appeal from the Hamilton Superior Court<br><br>The Honorable Steven R. Nation, Judge<br><br>Trial Court Cause No.<br>29D01-1612-F3-9127 |

**Altice, Judge.**

# Case Summary

Following a jury trial, Shakka Brogdon was found guilty of two counts of Level 3 felony aggravated battery, stemming from his involvement in a fight in which one person died. The trial court merged the counts and sentenced Brogdon to sixteen years of incarceration. He raises two issues that we restate as:

> I. Whether the trial court abused its discretion when it denied his request for a continuance of the jury trial; and
>
> II. Whether Brogdon's sentence is inappropriate in light of the nature of the offense and the character of the offender.

We affirm.

# Facts & Procedural History

Brogdon was one of four young men involved in a physical fight occurring during the afternoon of December 7, 2016. Earlier that day, Daniel Zuluaga and his long-time friend Cory Zimmer decided to purchase and smoke marijuana, although neither had any money. Zuluaga called his dealer, Joseph Coccaro and arranged a buy. Around 2:00 p.m., Zimmer and Zuluaga took Zuluaga's mother's SUV to Coccaro's apartment complex.[1] They parked the SUV, and Zimmer moved to the back seat, and Zuluaga moved to the driver's seat. Zuluaga called Coccaro, who came down from his upstairs apartment,

---

[1] Zimmer drove the SUV because Zuluaga did not have a driver's license.

entered the car, and sat in the passenger seat. Coccaro gave Zuluaga the marijuana, and Zuluaga told him that he was not going to pay for it because Coccaro recently had shorted Zuluaga on an Adderall purchase. A disagreement ensued. While Coccaro was in the car with Zimmer and Zuluaga, Coccaro texted his friend and roommate, Brogdon, who at the time was getting a ride home from work. Coccaro told Brogdon that he was in a black Expedition, and Brogdon believed that Coccaro sounded "panicked." *Transcript Vol. 4* at 148. When Brogdon's co-worker, Andrew Segal, dropped off Brogdon at the apartment complex, Segal saw Coccaro, who he knew, in an SUV with another individual. As Brogdon was exiting Segal's car, Brogdon said to Segal something along the lines of "I'm about to beat this dude's ass." *Transcript Vol. 3* at 74.

[4]     Meanwhile, in the SUV, Coccaro punched Zuluaga, and Zuluaga's glasses flew off. As Zuluaga looked for his glasses, Coccaro continued to hit him. Zimmer, from the back seat, then started hitting Coccaro. Brogdon walked up to the SUV, entered the backseat, and began hitting Zimmer. At some point Zimmer and Brogdon moved from inside the car to outside of it and continued fighting. Zuluaga put the car in reverse, which caused Coccaro to stop hitting Zuluaga and jump out of the SUV. Coccaro joined Brogdon in punching Zimmer. Zuluaga shouted at them to stop, and Coccaro yelled back and threatened Zuluaga that if he told the police that "he would f-ing kill" him. *Id.* at 101. Zuluaga drove away, looped around the parking lot, and returned to see Brogdon still hitting Zimmer and Coccaro running to a car while yelling to

Brogdon to leave with him. Zuluaga recalled that as Coccaro was running away, Zimmer was standing, but when Zuluaga looked back from Coccaro to Brogdon, Zimmer was on the ground on his back. Brogdon thereafter got into a car with Coccaro and the two left.

[5] Zuluaga helped Zimmer sit up and tried to get Zimmer to his feet, but was unable to support him or get him to the SUV. Zimmer was breathing heavily and bleeding from his face. Meanwhile, Brogdon and Coccaro had returned to their apartment and, from their balcony, Brogdon yelled down to Zuluaga, "I should come down and get you too, mother f-er." *Id.* at 109. Zuluaga got scared and ran to the SUV. When he attempted to call for help, he found that his phone was shattered and Zimmer's lacked power. Zuluaga then drove home, leaving Zimmer in the parking lot. Rather than calling 911, Zuluaga called Zimmer's mother.

[6] Meanwhile, at around 1:45 p.m., Jane Flanders heard screaming and looked out her apartment window and saw Brogdon and Coccaro in an argument with the driver of an SUV. Moments later, she saw the SUV "peeling out" and, at that time, she saw Coccaro and Brogdon standing by Coccaro's car together and they "fist-bumped" each other. *Id.* at 146. After that, Flanders left her apartment for an appointment, and she saw Zimmer "laying flat" in the parking lot. *Id.* at 149. She called 911 and an EMT arrived at 2:40 p.m. By the time Zimmer was placed in the ambulance, the emergency personnel could not find a pulse. They attempted to revive Zimmer but were unsuccessful.

[7] According to a subsequent autopsy, Zimmer died from a combination of multiple injuries, including blunt force trauma to his head. Zimmer's left orbital bone under the eye was fractured, he had contusions to his face and head in a circular shape consistent with a brass knuckle or shoe, and he had a fractured skull. The skull fracture was consistent with Zimmer falling to the ground from a minimum of about six feet or being struck while already on the ground.

[8] On the evening of December 7, police questioned Brogdon, Coccaro, Coccaro's girlfriend Megan, and their friend Dylan. Brogdon denied having any knowledge of the incident. When Brogdon and Megan were left alone at the police station, Brogdon was recorded telling Megan not to say anything. Two days later, Brogdon was arrested. After his arrest, Brogdon gave a second statement indicating that he joined the fight because Coccaro asked for help and that it was Coccaro who kicked Zimmer in the head. Brogdon admitted to police that he hit Zimmer "in order for him to pass out." *Transcript Vol. 4* at 211.

[9] On December 9, 2016, the State charged Brogdon with: Count I, involuntary Manslaughter, a Level 5 felony; Count II, aggravated battery, a Level 3 felony; and Count III, aggravated battery, a Level 3 felony. The State charged his co-defendant, Coccaro, with the same offenses, and also Count IV, intimidation, a Level 6 felony, and Count V, dealing in marijuana, a Level 6 felony.

[10] Trial initially was set for February 6, 2017. Thereafter, Brogdon sought and received ten continuances of the trial setting. Ultimately, by order of October 19, 2017, the trial was set for January 8, 2018. On or around December 14, 2017, Brogdon learned that on December 5 Coccaro had pled guilty and signed a special factual basis, a copy of which was provided to Brogdon upon his request. On December 21, the trial court held Coccaro's guilty plea hearing and set the sentencing hearing for February 22, 2018.[2]

[11] On December 22, 2017, about two weeks prior to trial, Brogdon filed an "Eleventh Motion for Continuance" requesting a continuance of trial so that he could depose Coccaro after Coccaro's February 22, 2018 sentencing hearing. *Appellant's Appendix Vol. II* at 86. Brogdon asserted that Coccaro "has essential exculpatory information that will affect the defense strategy in this matter," and he was seeking a continuance until after Coccaro was sentenced, when Coccaro "no longer possesses a 5th Amendment privilege against self-incrimination for any participation that he might have had in this matter." *Id*. at 88. Brogdon sought a continuance "to allow for a deposition of Witness Coccaro so that [Brogdon] has the ability to fully investigate all available defenses in this matter." *Id*. at 89. The State objected to the continuance, asserting that (1) it did not intend to call Coccaro as a witness, and (2) the factual basis for Coccaro's plea was not exculpatory for Brogdon.

---

[2] According to the State, "Coccaro pleaded guilty to involuntary manslaughter and aggravated battery with an agreement that the involuntary manslaughter was a lesser included offense." *Appellee's Brief* at 23.

[12]    The trial court considered Brogdon's request for a continuance at the December 29, 2017 final pretrial hearing. In support of his motion, Brogdon argued that Coccaro is "a material fact witness, an eyewitness, and a participant to the event all rolled into one," and he urged the trial court to allow a continuance to allow Brogdon the opportunity to investigate what Coccaro "may or may not have to say if he actually loses that 5th Amendment privilege against self-incrimination." *Transcript Vol. 2* at 6. Counsel conceded, "I don't know what [Coccaro] may provide to us, but I think that he could provide exculpatory information" that "could change the defense strategy of Mr. Brogdon" and that Brogdon "should be allowed the opportunity to question [Coccaro] on that." *Id*. at 14.

[13]    The State responded that, first, "[Coccaro's] factual basis . . . is not exculpatory," and, second, even if Coccaro were to say something else in a deposition that was exculpatory, then "you have a witness that's given four or five different statements. How is that exculpatory." *Id*. at 9, 11. The State argued that the sought continuance was "a delay for the sake of delay" and should be denied. *Id*. at 11. The State informed the court that it had twenty witnesses "lined up and ready for this trial on January 8th," including a pathologist and a witness in Florida. The State observed that any continuance would delay the case at least until March, and the State had "no idea" whether the witnesses would be available then. *Id*. The trial court denied Brogdon's motion for continuance. Prior to the start of trial, Brogdon renewed the motion, and the trial court affirmed its prior ruling.

[14] During the January 8-12, 2018 jury trial, the State argued that Zimmer's fatal skull fracture was caused by Zimmer hitting the back of his head on the ground after being knocked out by a punch from Brogdon. The State also argued that even if the fatal injury was caused by Coccaro, Brogdon was still guilty as an accomplice. Brogdon argued that he went to the scene because Coccaro seemed panicked, and when he approached the SUV he saw Zuluaga and Zimmer hitting Coccaro. According to Brogdon, Coccaro begged Brogdon to help him and that, in response, Brogdon yanked Coccaro out of the SUV. Brogdon stated that Zimmer then pulled him into the car, hit him, and the two grappled. Brogdon described that as he was getting out of the car, Zimmer hit him again and they began fighting outside the SUV. Brogdon testified that at one point when he hit Zimmer, Zimmer fell to his knees or a sitting position, and then Coccaro "soccer kicked" Zimmer, who fell back and hit the ground. *Transcript Vol. 4* at 163. Brogdon stated that Coccaro "proceeded to . . . stomp" Zimmer in the face two or three times. *Id*. at 165. Although Brogdon admitted that he punched Zimmer multiple times, he testified he did so in defense of himself and Coccaro. Brogdon stated that he never touched Zimmer while Zimmer was lying on the ground. Brogdon admitted that, after the fight, he yelled down from the balcony at Zuluaga as he was trying to help Zimmer.

[15] A jury found Brogdon guilty of two counts of Level 3 felony aggravated battery as an accomplice, but acquitted him of involuntary manslaughter. On March 22, 2018, the trial court merged Counts II and III, and entered judgment of conviction on only Count III.

[16]    At his sentencing hearing, Brogdon expressed remorse to Zimmer's family, asked for forgiveness, and stated that Zimmer's death "haunts [him] every single day." *Transcript Vol. 5* at 140. Brogdon acknowledged that what he did was wrong and stated that he accepted responsibility for it, but maintained that he acted to defend himself. He expressed regret that he did not do more "to stop [] Coccaro from doing what he did." *Id*. at 141. Brogdon asked the trial court for the advisory sentence of nine years.

[17]    In its sentencing order, the trial court identified three aggravators: (1) Brogdon had "a history of criminal behavior . . . , including write-ups for failure to obey and battery while at the Indiana Department of Correction"; (2) Brogdon "recently violated conditions of probation . . . , including that [he] was on probation when this offense was committed"; and (3) "[t]he nature of the crimes of violence against a person in that, specifically, [Brogdon] failed to seek medical attention for the victim and [Brogdon] took actions to avoid detection or facts relating to the crime." *Appellant's Appendix Vol. II* at 218. The trial court found no mitigators, declining to find Brogdon's remorse as mitigating because it found his statements to be too inconsistent. The trial court sentenced Brogdon to the sixteen years in the Indiana Department of Correction. He now appeals.

## Discussion & Decision

### *Motion for Continuance*

[18] Brogdon contends that the trial court abused its discretion when it denied his request for "a three-month continuance to permit [him] the opportunity to decide whether to call Coccaro as a witness." *Appellant's Brief* at 17. Rulings on non-statutory motions for continuance are within the trial court's discretion and will be reversed only for an abuse of discretion and resultant prejudice.[3] *Robinson v. State*, 91 N.E.3d 574, 577 (Ind. 2018). An abuse occurs only where the trial court's decision is clearly against the logic and effect of the facts and circumstances. *Id.* "An abuse of discretion may be found in the denial of a motion for a continuance when the moving party has shown good cause for granting the motion," but "no abuse of discretion will be found when the moving party has not demonstrated that he or she was prejudiced by the denial." *In re K.W.*, 12 N.E.3d 241, 244 (Ind. 2014). "'There is a strong presumption that the trial court properly exercised its discretion.'" *Robinson*, 91 N.E.3d at 577 (quoting *Warner v. State*, 773 N.E.2d 239, 247 (Ind. 2002)).

[19] Here, on December 22, 2017, Brogdon sought a continuance of the January 8, 2018 trial date so that he could depose Coccaro following Coccaro's February

---

[3] A "defendant is statutorily entitled to a continuance where there is an 'absence of material evidence, absence of a material witness, or illness of the defendant, and the specially enumerated statutory criteria are satisfied.'" *Gibson v. State*, 43 N.E.3d 231, 236 (Ind. 2015) (quoting *Elmore v. State*, 657 N.E.2d 1216, 1218 (Ind. 1995) (citing Ind. Code § 35-36-7-1)). Brogdon makes no claim that he was entitled to a continuance as a matter of right.

sentencing hearing, when Coccaro would lose his Fifth Amendment privilege against self-incrimination, and then Brogdon could decide whether to call Coccaro as a witness at trial. Brogdon's position is that Coccaro may have had exculpatory evidence or at least had testimony that would have corroborated Brogdon's self-defense claim. In support, Brogdon observes that, in one of Coccaro's statements to police, Coccaro said that while he was in the vehicle with Zuluaga and Zimmer, he texted "I need you" to Brogdon, who arrived to help Coccaro. *Appellant's Appendix Vol. II* at 27. According to Coccaro's statement, Brogdon was mad that he had to become involved and "save" Coccaro. *Id.* On appeal, Brogdon argues that Coccaro's statement about Brogdon arriving to help and save Coccaro "corroborated Brogdon's testimony" and was "extremely crucial to Brogdon's self-defense claim." *Appellant's Brief* at 15. Brogdon urges that any prejudice to the State from a continuance would have been minimal, as the State would have suffered only the inconvenience of the need to reschedule witnesses, but that the harm to Brogdon "was extreme" because "[h]ad Brogdon called Coccaro as a witness, the jury may not have rejected his claim of self-defense." *Id.* at 12. Brogdon claims that the trial court's ruling thereby denied him the opportunity to fully exercise his right to present a defense under the Sixth Amendment and the Due Process Clause. *Id.* at 15. We disagree and find no abuse of discretion and no violation of Brogdon's right to present a defense.

[20] Here, just a few weeks before trial, Brogdon filed his eleventh motion for continuance. While a number of the prior continuances were related to

discovery, the trial had been delayed at that point by almost a year. The State had twenty witnesses arranged to appear at the January 8 trial, including a doctor and a witness coming from Florida. Any continuance would have delayed the trial by at least another three months. Brogdon sought the continuance in order to have the opportunity to (1) depose co-defendant Coccaro after Coccaro had been sentenced, and (2) decide whether to call Coccaro as a witness. While Brogdon maintains that Coccaro may have offered testimony that corroborated Brogdon's self-defense claim – based on the fact that Coccaro in one statement to police stated the Brogdon arrived after the fight and came with the purpose of saving Coccaro – other statements that Coccaro made to police were more incriminating of Brogdon and indicated that (1) Brogdon pulled Zimmer from the vehicle and was "kicking [Zimmer's] ass," (2) Coccaro saw Brogdon punch and kick Zimmer while he was on the ground, and (3) Brogdon had stated that he hoped he had not killed Zimmer. *Appellant's Appendix Vol. II* at 27-28. At best, any trial testimony that Coccaro would have given, even if to some degree exculpatory, would have been conflicting with his other statements. We agree with the State that Brogdon's "mere speculation that Coccaro may have provided corroborating testimony did not meet [Brogdon's] obligation to prove prejudice" stemming from the trial court's denial of his request for a continuance. *Appellee's Brief* at 17. Based on the circumstances before us, we find no error with the trial court's denial of Brogdon's motion for continuance.

## *Inappropriate Sentence*

[21]     Brogdon claims that his sixteen-year sentence is inappropriate.  Pursuant to Ind. Appellate Rule 7(B), this Court "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender."  Our Supreme Court has explained that the principal role of appellate review should be to attempt to leaven the outliers, "not to achieve a perceived 'correct' result in each case."  *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008).  Sentencing review under Appellate Rule 7(B) is very deferential to the trial court.  *Conley v. State*, 972 N.E.2d 864, 876 (Ind. 2012). "Such deference should prevail unless overcome by compelling evidence portraying in a positive light the nature of the offense (such as accompanied by restraint, regard, and lack of brutality) and the defendant's character (such as substantial virtuous traits or persistent examples of good character)."  *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015).

[22]     The determination of whether we regard a sentence as inappropriate "turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case."  *Bethea v. State*, 983 N.E.2d 1134, 1145 (Ind. 2013) (quoting *Cardwell*, 895 N.E.2d at 1224).  The question under App. R. 7(B) is "not whether another sentence is more appropriate" but rather "whether the sentence imposed is inappropriate."  *Miller v. State*, 105 N.E.3d 194, 196 (Ind. Ct. App. 2018).

Brogdon bears the burden of persuading us that his sentence is inappropriate. *Barker v. State*, 994 N.E.2d 306, 315 (Ind. Ct. App. 2013), *trans. denied*.

[23] In order to assess the appropriateness of a sentence, we first look to the statutory range established for the classification of the relevant offenses. Brogdon was convicted of a Level 3 felony. The sentencing range for a Level 3 felony is three to sixteen years, with an advisory sentence of nine years. Ind. Code § 35-50-2-5. In this case, Brogdon received the maximum sentence of sixteen years, and he asks this court to revise his sentence to the advisory of nine years.

[24] As this court has recognized, "[t]he nature of the offense is found in the details and circumstances of the commission of the offense and the defendant's participation." *Croy v. State*, 953 N.E.2d 660, 664 (Ind. Ct. App. 2011). Brogdon argues that his friend Coccaro "started a fight over drugs and solicited Brogdon's help." *Appellant's Brief* at 12. Brogdon asserts that, "[a]lthough [he] is responsible for Coccaro's acts, he had no idea Coccaro was going to escalate the fight." *Id*. at 20. Brogdon asserts that from the fact that the jury acquitted him of involuntary manslaughter, it can be inferred "the jury found that Coccaro, not Brogdon, delivered the blow that killed Zimmer." *Id*. at 19. Brogdon maintains that his culpability was thus less than Coccaro's, who received a nine-year sentence, and that his "maximum sentence should be revised to reflect his lesser culpability." *Id*. at 12. We disagree that the nature of the offense warrants a reduction in his sentence.

[25]     Even if it was Coccaro who started the fight that ultimately resulted in Zimmer's death, and even if Brogdon responded to the scene in order to help or save Coccaro, the evidence favorable to the verdict is that Brogdon punched Zimmer, pulled him from the vehicle, and continued to fight with him even after Coccaro ran away and yelled at Brogdon to leave too. Brogdon admitted at trial that he punched Zimmer in the head three times, and he had previously told officers that he punched Zimmer as many as six times. In a statement to police, Brogdon said that he hit Zimmer "in order for him to pass out." *Transcript Vol. 4* at 211. Even if Coccaro "soccer kicked" Zimmer, as Brogdon claims, Brogdon did nothing to stop it and, afterward, Brogdon and Coccaro "fist bumped" in celebration of their accomplishments. *Id.* at 163; *Transcript Vol. 3* at 146. We cannot say that the nature of the offense warrants a reduced sentence.

[26]     "The character of the offender is found in what we learn of the offender's life and conduct." *Croy*, 953 N.E.2d at 664. Brogdon urges that he had a "rough childhood," which included not having his father as part of his life, moving residences frequently, and having older brothers that were negative influences and included him in criminal activity. He urges that he "has a relatively minor juvenile record" and that his criminal history is "similar to that of Coccaro's." *Appellant's Brief* at 21. He argues that, "[a]s to their character, the only difference is that Coccaro plead guilty and Brogdon did not" and that "[t]he fact that [Brogdon] exercised that right does not justify a maximum sentence where

the principal received the advisory[.]" *Id*. He maintains that "the only appropriate sentence is one similar to [] Coccaro['s]." *Id*. at 22. We disagree.

[27] The court found as aggravating Defendant's criminal history, his history of misconduct while incarcerated, and his history of crime while on probation. The record reflects that, as a juvenile, Brogdon had one true finding for what would be a Class D felony drug possession. When Brogdon was eighteen years old, he aided his brothers in committing a residential burglary and robbery, for which Brogdon pled guilty to Class B felony robbery and burglary and received concurrent sentences of ten years with six years suspended. Brogdon was still on juvenile probation when he committed the burglary and robbery, and he was on probation for those convictions when he committed the present offense. In 2013, he was convicted of possession of a cell phone while incarcerated, a Class A misdemeanor. In 2015, Brogdon "was written up" for battery and refusing to obey an order while in DOC, and he has received "several verbal and written warnings" while in the Hamilton County Jail. *Appellant's Appendix Vol. III* at 7.

[28] When police first spoke to Brogdon in this case, he lied and represented that he knew nothing about it. He also told another witness to say the same. As Zuluaga was attempting to help Zimmer, Brogdon, from his apartment balcony, threatened Zuluaga, "I should come down and get you too, mother f-er." *Transcript Vol. 3* at 109. We cannot say that Brogdon's character warrants downward revision of his sentence.

[29] We reiterate that our task on appeal is not to determine whether another sentence might be more appropriate; rather, the inquiry is whether the imposed sentence is inappropriate. *Barker*, 994 N.E.2d at 315. Brogdon has failed to carry his burden of establishing that his sentence is inappropriate in light of the nature of the offense and his character.

[30] Judgment affirmed.

Brown, J. and Tavitas, J., concur.