

FILED

Jul 21 2023, 8:26 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Mark K. Leeman
Logansport, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

Alexandria Sons
Deputy Attorney General
Indianapolis, Indiana

I N   T H E
# COURT OF APPEALS OF INDIANA

Patrick Hinton,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

July 21, 2023

Court of Appeals Case No.
23A-CR-107

Appeal from the Cass Superior
Court

The Honorable James
Muehlhausen, Judge

Trial Court Cause No.
09D01-2108-F6-223

**Opinion by Judge Mathias**
Judges Vaidik and Pyle concur.

**Mathias, Judge.**

[1]     Patrick Hinton appeals his convictions for Level 6 felony possession of

methamphetamine and Class C misdemeanor possession of paraphernalia.

Hinton raises two issues for our review, but we need only address the following

dispositive issue: whether the State's seizure of evidence from Hinton's backyard without a warrant violated his rights under the Fourth Amendment to the United States Constitution. We reverse Hinton's convictions.

## Facts and Procedural History

[2] Around 3:00 a.m. on August 18, 2021, the Logansport Police Department received a phone call from Patricia Sanchez. Sanchez stated that she was having "some issues" with getting her belongings out of a house at 1417 Smead Street. Tr. Vol. 2, p. 12. Hinton lived at that house with the owner of the house, Carol Zook. Sanchez reported that Hinton had stated that, if Sanchez showed up at the house, "he was going to shoot at her or something along those lines." *Id.* at 13. Sanchez added that Zook "wanted to have [Hinton] kicked out, but [Zook] was fearful" of acting on that. *Id.*

[3] The Logansport Police Department dispatched Officers Branson Eber and Joseph Flory to the residence "to make contact with [Hinton] and . . . to check on [Zook] to make sure she was doing okay." *Id.* The two officers arrived shortly thereafter. Officer Flory approached the front door of the house, while Officer Eber walked down a public alley adjacent to the west side of the house and around to the back.

[4] As Officer Eber approached the backyard of the residence, he observed Hinton sitting in a chair about sixty feet from the property line into the backyard. Officer Eber shined his flashlight toward Hinton, and Hinton "stood up," "dropped an item on the ground," and said, "who the f**k [is] that[?]" *Id.* at 81.

Officer Eber "wasn't sure" what the object was that Hinton had dropped. *Id.* at 27. Hinton then approached Officer Eber with "his hand behind his back" and asked the officer to "[s]how me your badge." *Id.* at 81. Officer Eber shined the flashlight on himself to confirm for Hinton that he was an officer.

[5] Meanwhile, Officer Flory approached the front door of the residence by way of a paved path. However, before he had a chance to knock on the door, Officer Eber radioed that he had made contact with Hinton in the backyard. Officer Flory also heard voices in the backyard; in particular, "somebody was yelling and it wasn't Officer Eber." *Id.* at 109. Officer Flory then proceeded toward the backyard around the eastern side of the house.

[6] Officer Flory arrived in the backyard as Officer Eber had himself illuminated. Officer Flory thought that Hinton seemed "erratic . . . as if he was intoxicated," but, once Hinton knew "[the officers] were the police," he "calm[ed] down." *Id.* at 110-11. The officers then informed Hinton that they were there "to conduct a welfare check on Ms. Zook." *Id.* at 111. Hinton was "cooperative" and "fine" at that point, and he escorted the officers back around the east side of the house to the front door. *Id.*

[7] Back at the front, Hinton "knock[ed] and yell[ed]" for Zook, who came to the front door but did not exit the house. *Id.* The officers were quickly satisfied that Zook "was okay." *Id.* at 112. Officer Flory then engaged Hinton in conversation while Officer Eber went back around the east side of the house and into the backyard where he had originally seen Hinton sitting. Officer Eber

would later testify that he went into the backyard "to make sure that there . . . wasn't a weapon" lying in the yard. *Id.* at 83. Instead of finding a weapon, Officer Eber found "a glass smoking device containing white crystal residue which was burnt on the bottom and right next to it an orange Bic lighter." *Id.* at 90. The officers then arrested Hinton.

[8] The State charged Hinton with Level 6 felony possession of methamphetamine and Class C misdemeanor possession of paraphernalia. Thereafter, Hinton moved to suppress Officer Eber's seizure of the items from the backyard on the ground that the officer's entry into the backyard without a warrant violated Hinton's rights under the Fourth Amendment to the United States Constitution and Article 1, Section 11 of the Indiana Constitution. The trial court denied Hinton's motion after a hearing. At his ensuing jury trial, Hinton objected to the admission of the same evidence on the same grounds, which the trial court overruled. In overruling Hinton's objection, the court stated that it believed that Officer Eber's entry into the backyard was justified by exigent circumstances and the plain-view doctrine. The jury then found Hinton guilty as charged, and the trial court sentenced him accordingly. This appeal ensued.

## Standard of Review

[9] On appeal, Hinton argues that the trial court abused its discretion when it admitted into evidence the glass smoking pipe, with its white crystal residue, which was seized from Hinton's backyard without a warrant. We generally assess claims relating to admitting or excluding evidence for abuse of discretion. *Combs v. State,* 168 N.E.3d 985, 990 (Ind. 2021). However, where, as here, a

challenge to an evidentiary ruling is based on the constitutionality of the search or seizure of evidence, the issue on appeal is a question of law that we review de novo. *Id.*

## The officer's entry into Hinton's backyard without a warrant violated Hinton's rights under the Fourth Amendment.

[10] There is no dispute in this appeal that Officer Eber entered into Hinton's backyard, an area protected by the Fourth Amendment, without a warrant. The Fourth Amendment protects people against unreasonable searches and seizures and "generally requires warrants" for those searches and seizures. *Id.* at 991 (quotation marks omitted). A warrantless search or seizure is per se unreasonable, and in such circumstances the State bears the burden to show that one of the "well-delineated exceptions" to the Fourth Amendment's warrant requirement applies. *Id.* (quotation marks omitted).

[11] The trial court concluded that exigent circumstances justified Officer Eber's warrantless entry into Hinton's backyard. The State does not defend that conclusion on appeal, and rightfully so. For the exigent-circumstances exception to the Fourth Amendment's warrant requirement to apply, the totality of the circumstances must demonstrate "an emergency that justified acting without a warrant." *Ramirez v. State*, 174 N.E.3d 181, 180 (Ind. 2021) (quotation marks omitted). The purpose of this exception to the warrant requirement is to avoid a scenario where an officer's "delay [in] acting to obtain a warrant would, in all likelihood, permanently frustrate an important police objective, such as to prevent the destruction of evidence relating to criminal

activity or to secure an arrest before a suspect can commit further serious harm." *United States v. Rengifo*, 858 F.2d 800, 805 (1st Cir. 1988), *abrogated on other grounds by Kentucky v. King*, 563 U.S. 452, 464 (2011).

[12] There was no emergency here. Officer Eber and the trial court expressed concern that a firearm might have been lying in Hinton's backyard and could be accessed by a child or other person. But, even if so, there was no one near the premises, and it was around three o'clock in the morning. There was no reason that Officer Eber could not have monitored the scene while seeking a warrant. Thus, Officer Eber's entry into Hinton's backyard was not justified by exigent circumstances.

[13] The trial court also concluded that Officer Eber's entry onto the property was justified under the plain-view doctrine. The State likewise argues on appeal that the plain-view doctrine justified Officer Eber's entry onto the property. The plain-view exception to the Fourth Amendment's warrant requirement allows an officer to seize an object without a warrant if (1) the officer is lawfully in a position from which to view the object, (2) the incriminating character of the object is immediately apparent, and (3) the officer has a lawful right of access to the object. *Combs*, 168 N.E.3d at 991 (quoting *Warner v. State*, 773 N.E.2d 239, 245 (Ind. 2002)). This exception "stands for the premise that objects which are in plain view of an officer who rightfully occupies a particular location can be seized without a warrant and are admissible as evidence." *Id.* at 991-92 (quoting *Sloane v. State*, 686 N.E.2d 1287, 1291 (Ind. Ct. App. 1997), *trans. denied*). Seizures under this exception are "scrupulously subjected to Fourth

Amendment inquiry." *Id.* at 992 (quoting *Soldal v. Cook Cnty.*, 506 U.S. 56, 66, (1992)). We need not discuss the first or third prongs of the plain-view inquiry here.

[14] The Indiana Supreme Court has stated that the second prong of the plain-view doctrine "requires that law enforcement officials have probable cause to believe the evidence will prove useful in solving a crime. As a plurality of the Supreme Court explained in *Texas v. Brown*, this does not mean that the officer must 'know' that the item is evidence of criminal behavior." *Taylor v. State*, 659 N.E.2d 535, 538-39 (citing, *inter alia*, 460 U.S. 730, 741 (1983)). Probable cause, in turn, "requires only that the information available to the officer would lead a person of reasonable caution to believe the items could be useful as evidence of a crime." *Id.* at 539.

[15] The State asserts that Officer Eber had probable cause to believe that the incriminating nature of the object dropped by Hinton was immediately apparent because the officers had been called to the scene "due to a threat of gun violence"; because the dropped object had a "reflective nature"; and because Hinton initially appeared to be acting in an "erratic" or aggressive manner. Appellee's Br. at 10-11. We cannot agree that, at the time Officer Eber was in the public alley, where he had a right to be when he observed Hinton drop the object, the circumstances before him demonstrated probable cause to believe the object would prove useful in solving a crime.

[16] Officer Eber went to Hinton's residence on a wellness check for Zook, not on the report of a criminal offense. While he was standing in the public alley adjacent to the residence, Officer Eber observed Hinton drop an object some sixty feet away at 3:00 a.m. The object reflected the light of the officer's flashlight. Officer Eber acknowledged that he "wasn't sure" what the object was that Hinton had dropped. Tr. Vol. 2, p. 27. And, while Hinton was perhaps aggressive before the officers confirmed that they were law enforcement officers, once they had done so Hinton was "cooperative" and "fine." *Id.* at 111. The officers then confirmed that Zook was okay, dispelling the reason for the officers being at the residence.

[17] It was only at this time that Officer Eber returned to the backyard, entered onto it, and searched for the dropped object. And while an officer's subjective beliefs are not part of a Fourth Amendment analysis, we do note that Officer Eber did not express concern that he had observed Hinton drop something that might be useful in solving a crime; he stated instead that he was concerned that a firearm might be lying in the open for anyone to access.

[18] In sum, nothing in the record demonstrates probable cause that Officer Eber had plainly viewed evidence of a crime prior to his entry onto Hinton's property. And, by that time, the Fourth Amendment violation was established. As there is no dispute that Hinton's convictions cannot be affirmed without the illegally seized evidence, we reverse his convictions.

[19] Reversed.

Vaidik, J., and Pyle, J., concur.